UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | |
| | ) | JUDGE |
| $194,073.14 | ) | |
| IN UNITED STATES CURRENCY | ) | |
| | ) | |
| Defendant in Rem | ) | MAGISTRATE JUDGE |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, by the undersigned Assistant United States Attorney, brings this complaint and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action to forfeit and condemn to the use and benefit of the United States of America certain property, more fully described below (referred to herein as "Defendant Property") as proceeds involved in knowingly violating 18 U.S.C. § 371, by conspiring to operate an unlicensed money transmitting or servicing business ("MSB") prohibited by 18 U.S.C. § 1960, and thereby forfeitable pursuant to 18 U.S.C. § 981(a)(1)(A) and Defendant Randall Lord's Plea Agreement filed on April 19, 2016.

## JURISDICTION AND VENUE

2.     Plaintiff brings this action *in rem* in its own right to forfeit and condemn Defendant Property pursuant to 18 U.S.C. § 981(a)(1)(A) and (D)(vi).  This Court has jurisdiction over this action under 28 U.S.C. §§ 1345 and 1355.

3.      Venue is proper in this district pursuant to 18 U.S.C. § 981(h); 28 U.S.C. §§ 1355 and 1395 because the acts or omissions giving rise to the forfeiture occurred in this district and criminal prosecution related to the seizure of the Defendant

Property has been brought in this district.  *See United States of America v. Randall B. Lord*, docket number 5:15-cr-00240-02.

## THE DEFENDANT *IN REM*

4.     Defendant Property consists of the following described property:

$194,073.14 in United States currency received via cashier's check no. 0189186, dated December 14, 2018, from First National Bank of Omaha in the name of Randall Lord dba Quantum Health LLC, pursuant to Seizure Warrant No. 15:18-SM-00320.

## PROCEDURAL HISTORY AND FACTS

5.  On November 18, 2015, the United States entered an indictment against Randall B. Lord and Michael A. Lord, a father and son tandem (hereinafter referred to together as the "Lords"), for multiple counts of conspiracy to operate an unlicensed MSB in violation of 18 U.S.C. §1960, money laundering in violation of 18 U.S.C. § 1956, failure to file Currency Transaction Reports ("CTRs") in violation of 31 U.S.C. §§ 5313, 5322, wire fraud in violation of 18 U.S.C. §1343, and drug conspiracy in violation of 21 U.S.C. §846 with criminal forfeiture allegations under 18 U.S.C. 982 and 31 U.S.C. § 5317.

6.     In April of 2016, the Lords pled guilty to conspiracy to operate an unlicensed MSB, namely a bitcoin exchange business, under 18 U.S.C. § 371 and agreed to forfeiture.   Although the Lords were sentenced to prison and are currently incarcerated, this Court denied the government's Motion for Preliminary Order of Forfeiture in the criminal case because the Lords did not specifically plead guilty to a forfeitable offense.  Therefore, no final order of forfeiture was ever entered related to the criminal prosecution.

7.     In each of their respective pleas, however, the Lords explicitly agreed to

forfeit all interest in any asset subject to forfeiture directly, or as a substitute asset under 21 U.S.C. § 853(p).  *See Plea Agreements of Randall B. Lord and Michael A. Lord,* p. 5, ¶ E. 1, attached as Exhibits 1 and 2, respectively.  Therein, the Lords waived any constitutional and statutory challenges to any forfeiture carried out in accordance with their plea agreements.  *See id*.

8.     The Lords also agreed to disclose the existence, nature and location of all assets forfeitable to the United States from 2013 through the date of the plea agreement, April 19, 2016.  *See id*. ¶ E. 2.  The Lords did not disclose the funds at issue in this civil forfeiture complaint.  The Lords further agreed that the United States may institute civil judicial forfeiture proceedings against all forfeitable assets and that they would not contest any such proceedings.  *See id*. p. 6. ¶ E. 4.

9.     In 2018, one of the credit card processors involved in the government's criminal investigation, Total System Services, Inc. (TSYS), notified Special Agent Darrin Heusel of the Internal Revenue Service that TSYS was holding $194,073.14 at its member bank, First National Bank of Omaha, on behalf of its merchant account with Randall Lord d/b/a Quantum Health, LLC.  In 2014, Randall Lord opened a merchant account with TSYS for credit card processing through Quantum Health, LLC – a shell entity created solely for the purpose of operating the Lords' unlicensed bitcoin exchange.  TSYS initially held the funds due to a large amount of chargebacks because of fraudulent activity.  Moreover, Randall Lord falsely represented to multiple credit card processing companies on his merchant applications that Quantum Health, LLC was a healthcare entity, when in fact it was an unlicensed MSB.

10.     As described more fully in Special Agent Heusel's Declaration in support of

the Seizure Warrant pursuant to 18 U.S.C. § 981(b), attached hereto as Exhibit 3 and incorporated herein, there is probable cause that Defendant Property was involved in transactions laundering monetary instruments through an unlicensed MSB in violation of 18 U.S.C. §§ 1956  and 1960.  These transactions also represent or are traceable to gross receipts obtained, directly or indirectly, from wire fraud in violation of 18 U.S.C. § 1343.

11.    On December 11, 2018, the United States filed an Application for Seizure Warrant pursuant to 18 U.S.C. § 981(b), which the Magistrate Judge of this Court signed the same day.  Following First National Bank of Omaha's issuance of the December 14, 2018 cashier's check to the U.S. Department of Treasury in response to the Seizure Warrant, the government provided Randall Lord written notice to file an administrative claim within 60 days under 18 U.S.C. § 981 (a)(1)(A)(i).

12.    On April 2, 2019, Randall Lord submitted a timely and sufficient Claim of Ownership under 18 U.S.C. § 983(a)(2).  See Exhibit 4.  The United States therefore files this complaint for civil forfeiture within 90 days thereof pursuant to 18 U.S.C. § 983(a)(3).

## **CLAIM FOR RELIEF**

13.    Paragraphs 1-12, including Exhibits 1-4, are incorporated herein by reference.

14.    Pursuant to the civil forfeiture statute, 18 U.S.C. § 983 (a)(1), [t]he following property is subject to forfeiture to the United States:

> (A)    Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, … or 1960 of this title, or any property traceable to such property.
> (D)    Any property, real or personal which represents or is traceable to the gross receipts obtained, directly or indirectly, from a

violation of … (vi) section 1343 (relating to wire fraud)…

18 U.S.C. § 981.

15.    By reason of the facts set forth and incorporated herein, the Defendant

Property is properly condemned as forfeited to the United States of America pursuant

to 18 U.S.C. §§ 981(a)(1)(A) and (D)(vi) and 981(f).

WHEREFORE, the Plaintiff requests that notice of this action be given to all

persons known or thought to have an interest in or right against the Defendant

Property; that the Defendant Property be forfeited and condemned to the United

States of America; that the Plaintiff be awarded its costs and disbursements in this

action; and that the Court award the Plaintiff such other and further relief as this

Court deems proper and just.

Dated:  June 28, 2019                              Respectfully Submitted,

DAVID C. JOSEPH
United States Attorney

BY:    */s/ Tass D. Waterston*
Tass D. Waterston (TX-90001809)
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101
Telephone: (318) 676-3600
tass.waterston@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2019, a copy of the foregoing *Verified Complaint for Forfeiture in Rem* was filed electronically with the Clerk of Court using the CM/ECF system.  I also certify that I have mailed by United States Postal Service a copy of same to the following non-CM/ECF participant:

**Randall B. Lord**
**c/o Everett C. Baudean**
**Rufus Craig Law Firm LLC**
**704 South Foster Drive**
**Baton Rouge, LA 70806**


/s/ Tass D. Waterston
TASS D. WATERSTON
Assistant United States Attorney

RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE ___4__/_19_/_16____
BY_____

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 5:15-cr-00240-02 |
| | * | |
| | * | |
| VERSUS | * | |
| | * | |
| | * | JUDGE S. MAURICE HICKS, JR. |
| RANDALL B. LORD | * | MAGISTRATE JUDGE HORNSBY |

### PLEA AGREEMENT

A.  **INTRODUCTION**

1.  This document contains the complete plea agreement between the Government and **RANDALL B. LORD**, the Defendant. No other agreement, understanding, promise, or condition exists, nor will any such agreement, understanding, promise or condition exists unless it is committed to writing in an amendment attached to this document and signed by the Defendant, an attorney for the Defendant, and an attorney for the Government. The terms of this plea agreement are only binding on the Defendant and the Government if the Court accepts the Defendant's guilty plea.

B.  **THE DEFENDANT'S OBLIGATIONS**

1.  **RANDALL B. LORD** shall appear in open court and plead guilty to **Count One** of the Indictment pending in this case;

2.  Defendant agrees to provide the United States Probation Office and the United States Attorney's Office with a signed, sworn financial statement, which

accurately reflects the Defendant's financial condition, **within two weeks** after entering the plea contemplated by this agreement. Defendant further agrees that this financial statement will be made in a form provided by or acceptable to the United States Attorney. Additionally, the Defendant will give the United States Attorney's Office and the Probation Office full access to the Defendant's bank and other financial records and does now waive any rights to financial privacy that the Defendant may have under federal or state statutes or regulations.

3.  Defendant further agrees to sign any Internal Revenue Service form or other form presented by the Government in order for the Government to have access to all of the Defendant's income tax returns, including personal, corporations, or trusts to which Defendant may have participated in or signed. Defendant acknowledges that failure to provide an accurate financial statement and tax return information within the time noted is a violation of this Plea Agreement and will be a basis for the United States Attorney to move to set aside the plea.

C.  <u>THE GOVERNMENT'S OBLIGATIONS</u>

1.  If the Defendant completely fulfills all of his obligations and agreements under this plea agreement, the Government agrees it will not prosecute the Defendant for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Indictment, and will dismiss any remaining counts in the Indictment at sentencing.

2.  The Government will and hereby moves pursuant to U.S.S.G. § 3E1.1(b) for the Defendant to receive a one point reduction in his offense level

should that offense level be 16 or greater, as the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently.

D. SENTENCING

**RANDALL B. LORD** understands and agrees that:

1.     the maximum punishment on **Count One** is a term of imprisonment of not more than five (5) years (pursuant to 18 U.S.C. § 371), and a fine of not more than $250,000.00 (pursuant to 18 U.S.C. § 3571);

2.     he shall be required to pay a special assessment of $100 **at the time of the guilty plea** by means of a cashier's check, bank official check, or money order payable to "Clerk, U.S. District Court;"

3.     he may receive a term of Supervised Release of not more than three (3) years in length in addition to any term of imprisonment imposed by the Court;

4.     a violation of any condition of Supervised Release at any time during the period of Supervised Release may result in the Defendant being incarcerated over and above any period of imprisonment initially ordered by the Court;

5.     the period of incarceration for a violation of a condition of Supervised Release could be as much as the full term of Supervised Release initially ordered by the Court regardless of the amount of time of the Supervised Release the Defendant had successfully completed;

6. in addition to the penalties set forth in the preceding paragraphs, the Court must order restitution in this case and the Defendant agrees that restitution in this case is not limited to the amounts or victims referred to in the specific charges to which he has pled guilty and will be determined by the Court after a complete review of the evidence developed in the investigation of this case by the Government and further investigation by the Probation Office as contained in the Presentence Report;

7. any fine and/or restitution imposed as part of the Defendant's sentence will be made due and payable immediately, that the Defendant will be held liable for all restitution jointly and severally with all co-defendants, and any federal income tax refund received by the Defendant from the Internal Revenue Service while there is an outstanding fine and/or restitution shall be applied toward the fine and/or restitution award;

8. as part of the presentence investigation, the Government will make available to the Court all evidence developed in the investigation of this case;

9. this case is governed by the Sentencing Reform Act, as modified by United States v. Booker, 543 U.S. 220 (2005), that he has discussed the Sentencing Guidelines and their applicability with his counsel, and understands and acknowledges that a final determination of the applicable guidelines range cannot be made until the completion of the presentence investigation;

10. the sentencing judge alone will decide what sentence to impose; and

11.     the failure of the Court to adhere to a sentencing recommendation tendered by counsel shall not be a basis for setting aside the guilty plea which is the subject of this agreement.

E.      FORFEITURE

1.      The Defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p). With respect to any asset which the Defendant has agreed to forfeit, the Defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

2.      The Defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he, his co-defendants and his co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from 2013 to the present. The Defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets. As part of this cooperation, the Defendant agrees to undergo any polygraph examination the United States might choose to

administer concerning the identification and recovery of all such forfeitable assets and to provide and/or consent to the release of the Defendant's federal and state income tax returns for the previous three years. The Defendant understands and agrees that the United States will use the financial information when making its recommendation to the Court regarding the Defendant's acceptance of responsibility for the offenses charged in the indictment.

3.      The Defendant understands and agrees that in the event the United States learns of a knowing misrepresentation by the Defendant on, or in connection with, the financial information disclosed to the United States, and in the event that such nondisclosure or misrepresentation involves assets valued at more than $1,000, the United States may, at its option: (1) be released from all of its obligations under this plea agreement, or (2) let the plea agreement stand and take other action as it deems appropriate.

4.      The Defendant agrees that the United States may institute civil judicial or administrative forfeiture proceedings against all forfeitable assets in which the Defendant has an interest, and that he will not contest any such forfeiture proceedings.

5.      The Defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing.

F.  REINSTATEMENT OF ORIGINAL INDICTMENT

**RANDALL B. LORD** understands and agrees that should this plea be overturned for any reason at a later date, the Indictment, in its entirety, will be automatically reinstated without need for presentment to a Grand Jury or any motion or other action by the Government.

G.  SIGNATURE OF ATTORNEY FOR THE DEFENDANT, THE DEFENDANT, AND THE ATTORNEY FOR THE GOVERNMENT

I have read this plea agreement and have discussed it fully with my client, **RANDALL B. LORD**. It accurately and completely sets forth the entire plea agreement. I concur in **RANDALL B. LORD** pleading guilty as set forth in this plea agreement.

Dated: _April 13 2016_          _Paul Carmouche_
                                PAUL J. CARMOUCHE
                                Attorney for the Defendant

I have read this plea agreement and have discussed it with my attorney. I fully understand the plea agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this plea agreement.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this plea agreement and the matters related to this case.

Dated: 4/13/16

RANDALL B. LORD
Defendant

I accept and agree to this plea agreement on behalf of the United States of America.

STEPHANIE A. FINLEY
United States Attorney

Dated: April 13, 2016

CYTHERIA D. JERNIGAN
Assistant U.S. Attorney
MA Bar # 657960

RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE  4 / 19 / 16
BY  DM

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 5:15-cr-00240-01 |
| | * | |
| | * | |
| VERSUS | * | |
| | * | |
| | * | JUDGE S. MAURICE HICKS, JR. |
| MICHAEL A. LORD | * | MAGISTRATE JUDGE HORNSBY |

## PLEA AGREEMENT

A.  **INTRODUCTION**

1.  This document contains the complete plea agreement between the Government and **MICHAEL A. LORD**, the Defendant. No other agreement, understanding, promise, or condition exists, nor will any such agreement, understanding, promise or condition exists unless it is committed to writing in an amendment attached to this document and signed by the Defendant, an attorney for the Defendant, and an attorney for the Government. The terms of this plea agreement are only binding on the Defendant and the Government if the Court accepts the Defendant's guilty plea.

B.  THE DEFENDANT'S OBLIGATIONS

1.  **MICHAEL A. LORD** shall appear in open court and plead guilty to **Count One** and **Count Fifteen** of the Indictment pending in this case;

2.  Defendant agrees to provide the United States Probation Office and the United States Attorney's Office with a signed, sworn financial statement, which

accurately reflects the Defendant's financial condition, within two weeks after entering the plea contemplated by this agreement. Defendant further agrees that this financial statement will be made in a form provided by or acceptable to the United States Attorney. Additionally, the Defendant will give the United States Attorney's Office and the Probation Office full access to the Defendant's bank and other financial records and does now waive any rights to financial privacy that the Defendant may have under federal or state statutes or regulations.

3. Defendant further agrees to sign any Internal Revenue Service form or other form presented by the Government in order for the Government to have access to all of the Defendant's income tax returns, including personal, corporations, or trusts to which Defendant may have participated in or signed. Defendant acknowledges that failure to provide an accurate financial statement and tax return information within the time noted is a violation of this Plea Agreement and will be a basis for the United States Attorney to move to set aside the plea.

C.     THE GOVERNMENT'S OBLIGATIONS

1. If the Defendant completely fulfills all of his obligations and agreements under this plea agreement, the Government agrees it will not prosecute the Defendant for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Indictment, and will dismiss any remaining counts in the Indictment at sentencing.

2. The Government will and hereby moves pursuant to U.S.S.G. § 3E1.1(b) for the Defendant to receive a one point reduction in his offense level

should that offense level be 16 or greater, as the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently.

D.  SENTENCING

**MICHAEL A. LORD** understands and agrees that:

1.  the maximum punishment on **Count One** is a term of imprisonment of not more than five (5) years (pursuant to 18 U.S.C. § 371), and a fine of not more than $250,000.00 (pursuant to 18 U.S.C. § 3571); the maximum punishment on **Count Fifteen** is a term of imprisonment of not more than five (5) years and a fine of not more than $250,000.00 (pursuant to 21 U.S.C. § 841(b)(2));

2.  he shall be required to pay a special assessment of $200 **at the time of the guilty plea** by means of a cashier's check, bank official check, or money order payable to "Clerk, U.S. District Court;"

3.  he may receive as to **Count One** a term of Supervised Release of not more than three (3) years in length in addition to any term of imprisonment imposed by the Court; he shall receive as to **Count Fifteen** a term of Supervised Release of at least three (3) years in length in addition to any term of imprisonment imposed by the Court, as mandated by 21 U.S.C. § 841(b)(1)(C);

4. a violation of any condition of Supervised Release at any time during the period of Supervised Release may result in the Defendant being incarcerated over and above any period of imprisonment initially ordered by the Court;

5. the period of incarceration for a violation of a condition of Supervised Release could be as much as the full term of Supervised Release initially ordered by the Court regardless of the amount of time of the Supervised Release the Defendant had successfully completed;

6. in addition to the penalties set forth in the preceding paragraphs, the Court must order restitution in this case and the Defendant agrees that restitution in this case is not limited to the amounts or victims referred to in the specific charges to which he has pled guilty and will be determined by the Court after a complete review of the evidence developed in the investigation of this case by the Government and further investigation by the Probation Office as contained in the Presentence Report;

7. any fine and/or restitution imposed as part of the Defendant's sentence will be made due and payable immediately, that the Defendant will be held liable for all restitution jointly and severally with all co-defendants, and any federal income tax refund received by the Defendant from the Internal Revenue Service while there is an outstanding fine and/or restitution shall be applied toward the fine and/or restitution award;

8. as part of the presentence investigation, the Government will make available to the Court all evidence developed in the investigation of this case;

9.    this case is governed by the Sentencing Reform Act, as modified by United States v. Booker, 543 U.S. 220 (2005), that he has discussed the Sentencing Guidelines and their applicability with his counsel, and understands and acknowledges that a final determination of the applicable guidelines range cannot be made until the completion of the presentence investigation;

10.   the sentencing judge alone will decide what sentence to impose; and

11.   the failure of the Court to adhere to a sentencing recommendation tendered by counsel shall not be a basis for setting aside the guilty plea which is the subject of this agreement.

E.    FORFEITURE

1.    The Defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p). With respect to any asset which the Defendant has agreed to forfeit, the Defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

2.    The Defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or

as a substitute asset, in which he, his co-defendants and his co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from 2013 to the present. The Defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets. As part of this cooperation, the Defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of all such forfeitable assets and to provide and/or consent to the release of the Defendant's federal and state income tax returns for the previous three years. The Defendant understands and agrees that the United States will use the financial information when making its recommendation to the Court regarding the Defendant's acceptance of responsibility for the offenses charged in the indictment.

3. The Defendant understands and agrees that in the event the United States learns of a knowing misrepresentation by the Defendant on, or in connection with, the financial information disclosed to the United States, and in the event that such nondisclosure or misrepresentation involves assets valued at more than $1,000, the United States may, at its option: (1) be released from all of its obligations under this plea agreement, or (2) let the plea agreement stand and take other action as it deems appropriate.

4. The Defendant agrees that the United States may institute civil judicial or administrative forfeiture proceedings against all forfeitable assets in

which the Defendant has an interest, and that he will not contest any such forfeiture proceedings.

     5.    The Defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing.

## F.   REINSTATEMENT OF ORIGINAL INDICTMENT

     1.    **MICHAEL A. LORD** understands and agrees that should this plea be overturned for any reason at a later date, the Indictment, in its entirety, will be automatically reinstated without need for presentment to a Grand Jury or any motion or other action by the Government.

## G.   SIGNATURE OF ATTORNEY FOR THE DEFENDANT, THE DEFENDANT, AND THE ATTORNEY FOR THE GOVERNMENT

    I have read this plea agreement and have discussed it fully with my client, **MICHAEL A. LORD**. It accurately and completely sets forth the entire plea agreement. I concur in **MICHAEL A. LORD** pleading guilty as set forth in this plea agreement.

Dated: _4/13/2016_

                                            PAUL J. CARMOUCHE
                                          Attorney for the Defendant

    I have read this plea agreement and have discussed it with my attorney. I fully understand the plea agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this plea agreement.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this plea agreement and the matters related to this case.

Dated: 4-13-2016

*Michael Lord*

MICHAEL A. LORD
Defendant

I accept and agree to this plea agreement on behalf of the United States of America.

STEPHANIE A. FINLEY
United States Attorney

Dated: April 13, 2016

CYTHERIA D. JERNIGAN
Assistant U.S. Attorney
MA Bar # 657960

DECLARATION IN SUPPORT OF
APPLICATION OF THE UNITED STATES
FOR CIVIL SEIZURE WARRANT PURSUANT TO 18 U.S.C. §981(b)

IRS - Criminal Investigation Special Agent Darrin Heusel makes the following declaration, under the penalty of perjury under the laws of the United States, that the following information which he acknowledges is true and correct to the best of his knowledge and belief:

1) I make this Declaration in support of an application for Seizure Warrant to seize **$194,073.14 in currency held in an account with First National Bank of Omaha in the name of Randall Lord and/or Quantum Health, LLC** which is subject to civil forfeiture and seizure under Title 18 United States Code Sections 981(a)(1)(A) and (C), and 981(b) for violations of Title 18 United States Code, Sections 1956, 1960 and 1343.

**DECLARANT EXPERIENCE**

2) I have been a Special Agent with the United States Department of the Treasury, Internal Revenue Service, Criminal Investigation (IRS-CI) for approximately 14 years. I received a Bachelor of Science degree in Accounting and am also a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center. In addition, I have completed the Internal Revenue Service Special Agent Basic Training Academy in Glynco, Georgia. My training included the areas of search warrants, undercover techniques, surveillance techniques, search and seizure law and criminal law including provisions of Title 18, Title 26, and Title 31 of the United States Code.

3) My responsibilities as a Special Agent include the investigation of alleged criminal violations of Internal Revenue Laws (Title 26 U.S.C.) and related Bank Secrecy Act (Title 31 U.S.C.) and Money Laundering (Title 18 U.S.C.) offenses.  As a Special Agent, I have examined and analyzed tax returns, ledgers, journals, invoices, bank statements, cancelled checks, and other

business and financial records. I am well trained in methods of determining how individuals and businesses conduct their financial affairs and the methods they use to violate Internal Revenue Laws. I have personally conducted and assisted in numerous investigations of alleged criminal tax violations and have also participated in the execution of search warrants and the seizure of evidence of criminal activity.

4) The purpose of this application is to seize property that constitutes:

    a. Personal property involved in a transaction or attempted transaction in violation of Title 18 U.S.C. §§ 1956 and 1960; and

    b. Personal property which represents or is traceable to gross receipts obtained directly or indirectly from a violation of Title 18 U.S.C. § 1343.

5) Unless otherwise stated, the information in this declaration is either personally known to me or has been provided to me by other law enforcement officers and/or is based on a review of various documents and records as more particularly described herein. Because this declaration is being submitted for the limited purpose of establishing probable cause, I have not included every detail nor every aspect of the investigation in this declaration.

**INTRODUCTION**

6) This investigation involves MICHAEL LORD (son) and RANDALL LORD (father) (LORDS) operating an illegal Money Service Business (MSB), knowingly laundering/concealing proceeds from Specified Unlawful Activities (SUA), and engaging in wire fraud. This declaration contains information known by Declarant personally as well as information gained through discussions with various federal and local law enforcement agents. The probable cause to seize the requested property is based on documentary evidence, investigative findings and consultation with other law enforcement agents.

7) This application for seizure warrant arises from an investigation into the conduct of the LORDS in the Western Judicial District of Louisiana and elsewhere for possible violations of federal criminal offenses described above. The investigation began with a review of bank records associated with the LORDS, which showed large amounts of money orders and currency deposits into several financial accounts owned by the LORDS.

8) The investigation revealed that the LORDS had been operating as an exchanger of a digital currency known as Bitcoin. Specifically, the LORDS had been buying and selling Bitcoins in exchange for currency from other individuals, and had been doing so without filing federally mandated forms and without verifying basic information about their customers. An undercover operation was conducted to corroborate this information. As described below, the LORDS accepted cash from and provided Bitcoins to an undercover agent who informed the LORDS that he/she (the undercover agent) was involved in distributing steroids illegally.

9) The facts contained in this declaration demonstrate that there is probable cause to believe that the LORDS committed one or more of the federal criminal offenses described above, and that the funds contained in the bank account held with First National Bank of Omaha at the direction of Total System Services (TSYS) and on behalf of RANDALL LORD and/or QUANTUM HEALTH, LLC are directly related to and/or derived from those federal criminal offenses as set forth below.

## SUMMARY OF PROBABLE CAUSE

10) In or around November 2014, RANDALL LORD opened an account with TSYS and/or a related company providing merchant processing services. TSYS is a United States credit card processor, merchant acquirer and bank credit card issuer. TSYS provides payment processing, merchant, and related payment services to financial and nonfinancial institutions

in the United States. First National Bank of Omaha is the member bank of TSYS. Each merchant service company has a member bank that holds the funds processed by credit card processors for the benefit of its customer.

11) RANDALL LORD opened the account as "Randall Lord dba Quantum Health, LLC". QUANTUM HEALTH was a company created by RANDALL LORD in order to disguise the source of funds from the unlicensed MSB being operated by RANDALL and MICHAEL LORD. Through the transmission of merchant applications, RANDALL LORD falsely represented to multiple credit card processors that QUANTUM HEALTH was a business providing health and medical services, when in fact the entity was solely operating as an unlicensed exchanger of bitcoins.

12) Recently I was contacted by TSYS who informed me they were in possession of funds being held from transactions processed for QUANTUM HEALTH. The funds were initially being held by TSYS due to QUANTUM HEALTH having a large amount of chargebacks because of fraudulent charges – i.e. credit card customers were contacting TSYS and reporting the QUANTUM HEALTH charges as unapproved or fraudulent.

13) During the investigation, we obtained evidence that the LORDS had been processing stolen credit cards in exchange for bitcoins. Several companies and credit card processors such as Citibank, Bank of America, Merchant One and Chase reported receiving fraudulent charges associated with Jewella Chiropractic. Jewella Chiropractic was another business owned by RANDALL LORD that he utilized to process bitcoin transactions.

## DEFINITIONS AND BACKGROUND

### A.   THE BANK SECRECY ACT AND FINCEN

14) The Bank Secrecy Act ("BSA") is codified at Title 31 U.S.C. §§ 5313-5326 et seq.  These laws were enacted by Congress to combat the use of financial institutions to launder the proceeds of crime.  31 U.S.C. § 310 establishes FinCEN as a bureau within the Treasury Department and describes FinCEN's powers and duties. Treasury Order 180-01 describes FinCEN's responsibilities to implement, administer, and enforce compliance with the BSA.[1]

15) FinCEN's regulations are generally applicable to individuals or entities defined as "financial institutions."  Title 31 U.S.C. § 5312 defines a financial institution as, *inter alia*, "a licensed sender of money or any other person who engages as a business in the transmission of funds …"  See Title 31 U.S.C. § 5312(a)(2)(R).  Financial institutions are also defined in the Code of Federal Regulations as "money servicing businesses," ("MSBs") which include money transmitters.  See, 31 C.F.R. § 1010.100(t)(3) (defining "financial institution" as a "money servicing business;" see also, 31 C.F.R. § 1010.100(ff)(5) (defining money transmitters as money servicing businesses).

16) Money transmitting is defined as "the acceptance of currency, funds, or other value that substitutes for currency from one person *and* the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means."  See 31 C.F.R. 1010.100(ff)(5)(i)(A).  "Any means" is defined as including electronic funds transfer or informal value transfers. 31 C.F.R. § 1010.100(ff)(5)(i)(A).  Thus, as described below, a money transmitter can include an individual involved solely in the transmission of digital

---

[1]  On March 1, 2011, FinCEN transferred its regulations from 31 C.F.R. Part 103 to 31 C.F.R. Chapter X. Documents published before March 1, 2011, therefore, will refer to these rules with citations from 31 CFR Part 103 and documents published after this date with citations to 31 C.F.R. Chapter X.  The transfer and reorganization of BSA regulations from 31 C.F.R. Part 103 to 31 C.F.R. Chapter X did not alter any existing regulatory obligation or impose any new regulatory obligation in financial institutions.

currencies.    See  Application  of  FinCEN's  Regulations  to  Persons  Administering,
Exchanging,  or  Using  Virtual  Currencies,  FIN-2013-G001,  issued  March  18,  2013  (the
"FinCEN Guidance").

17) The federal regulations also exempt several categories of business and services from the
definition  of  money  transmitter,  including  communication  service  providers,  payment
processors, physical currency transporters (such as armored car services), prepaid access card
providers,  and  individuals  who  transmit  funds  integral  to  the  sale  of  goods  or  provision  of
services. 31 C.F.R. § 1010.100(ff)(5)(ii)(A)-(F).  None of these exemptions would apply to a
digital currency exchanger, as described below.

18) Financial institutions, including MSBs and money transmitters, are required to report each
deposit, withdrawal, exchange of currency, or other payment or transfer involving more than
$10,000 in currency.  See 31 U.S.C. § 5313; 31 C.F.R. §§ 1022.300, 1022.310, 1022.311,
and  1022.312  (cross-referencing  31  C.F.R.  §§  1010.300,  1010.310,  and  1010.311,  and
1010.312).  These reports are referred to as Currency Transaction Reports ("CTRs").

19) Financial institutions must verify and record the name and address of the individual who
conducted the reportable transactions, and must accurately record the identity, social security
number,  or  taxpayer  identification  number  of  any  person  or  entity  on  whose  behalf  the
reportable  transaction  was  conducted.    See  31  C.F.R.  §  1010.312.    CTRs  are  filed  with
FinCEN and are made available to law enforcement.

20) Any person who owns or controls an MSB is responsible for registering, and periodically re-
registering, the business with FinCEN.  See 31 U.S.C. § 5330(a); see also, 31 C.F.R. §
1022.380.  Registration must be done on or before the end of the 180-day period beginning
on the day following the date the business was established.  See 31 C.F.R. § 1022.380(b)(3).

A money transmitting business that fails to register with FinCEN is subject to criminal liability under Title 18 U.S.C. § 1960.

## B.   DIGITAL CURRENCY AND BITCOIN

21) Digital currency (also known as crypto-currency) is generally defined as an electronic-sourced unit of value that can be used as a substitute or fiat currency (i.e., currency regulated by a government that is not backed by a physical commodity).   Digital currency exists entirely on the Internet and is not stored in any physical form.   Digital currency is not issued by any government or bank and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.

22) Bitcoin is a type of digital currency.   Bitcoin payments are recorded in a public ledger that is maintained by peer-to-peer verification, and is thus not maintained by a single administrator or entity. Individuals can acquire Bitcoins either by "mining" or by purchasing Bitcoins from other individuals.   An individual can "mine" for Bitcoins by allowing his/her computing power to verify and record the Bitcoin payments into a public ledger.   Individuals are rewarded for this by being given newly created Bitcoins.

23) An individual can send and receive Bitcoins through peer-to-peer digital transactions or by using a third-party broker.   Such transactions can be done on any type of computer, including laptop computers and smart phones.

24) Bitcoins are stored on digital "wallets."   A Bitcoin wallet is what allows you to transact with other users.   The wallet gives you ownership of a Bitcoin balance so you can send and receive Bitcoins.   A digital wallet essentially stores the access code that allows an individual to conduct Bitcoin transactions on the public ledger.   To access Bitcoins on the public ledger, an individual must use a public address (or "public key") and a private address (or "private

key"). The public address can be analogized to an account number while the private key is like the password to access that account. Just like email, all wallets can interoperate with each other.

25) Even though the public addresses of transactors are recorded on the public ledger, the true identities of the individuals or entities behind the public addresses are not recorded. If, however, a real individual or entity is linked to a public address, it would be possible to determine what transactions were conducted by that individual or entity. Bitcoin transactions are, therefore, described as "pseudonymous," meaning they are partially anonymous.

## C.    DIGITAL CURRENCY EXCHANGERS AND FEDERAL REGULATIONS

26) As described above, an individual can acquire Bitcoins by purchasing them from a third-party in exchange for fiat currency. The third-parties are referred to as "exchangers" (or "DCEs"). DCEs will often charge a commission for processing Bitcoin transactions, similar to the fees charged by credit card companies or foreign currency exchangers. Legitimate DCEs have implemented anti-money laundering compliance programs and require customer verification, similar to the "know your customer" procedures implemented by banks.

27) DCEs are considered money transmitters under federal law and are subject to federal anti-money laundering ("AML") regulations. See 31 C.F.R. § 1010.100(ff)(5); see also FinCEN Guidance, FIN-2013-G001. An exchanger who (1) accepts and transmits a digital currency or (2) buys or sells digital currency is considered a money transmitter under FinCEN's regulations unless otherwise exempted under those regulations. See 31 C.F.R. § 1010.100(ff)(5)(i)(A)-(F).

28) The FinCEN Guidance provides that an individual who mines digital currency and then sells the digital currency to another person for real currency or its equivalent "is engaged in the

transmission to another location and is a money transmitter." See FinCEN Guidance, FIN-2013-G001. The FinCEN Guidance defines as a money transmitter any person who "accepts [digital currency] from one person and transmits it to another person as part of the acceptance and transfer of currency, funds, or other value that substitutes for currency." See FinCEN Guidance, FIN-2013-G001.

29) A darknet is a private network where connections are made only between trusted peers and IP addresses are not publicly shared. A darknet or "Deep Web" (Deep Web is a collection of darknets) is used by individuals to facilitate criminal activity and to monetize proceeds gained from criminal activity without detection. Some of the criminal activity facilitated through a darknet is the sale of narcotics, identity theft, credit card fraud, murder for hire, and child pornography. Individuals who use a darknet for financial transactions receive payment via virtual currency such as "Bitcoin." Bitcoin is the form of virtual currency associated with this case.

30) Bitcoins are very similar to owning a stock, commodity or a foreign currency that is constantly changing value. The cost to transfer Bitcoin is minimal. Bitcoins are stored in an individual's virtual wallet. The transfers can be traced from wallet to wallet, but it is very difficult to identify the owner of each wallet. The value of a Bitcoin fluctuates daily. The LORDS utilized Coinbase as their Bitcoin exchanger. Coinbase is a legitimate Bitcoin exchanger registered with FinCEN.

31) Bitcoin exchangers advertise their services on the internet or on a darknet. They advertise their exchange rates and the area of the United States they service. MICHAEL LORD and RANDALL LORD have been identified as being Bitcoin exchangers. MICHAEL LORD advertised that he would convert Bitcoin to U.S. Currency or U.S. Currency to Bitcoin. Also,

MICHAEL LORD advertised that an individual who conducts financial transactions with him will remain anonymous.

32) MICHAEL LORD advertised on the website Localbitcoins.com.  This website has chat rooms where peers can discuss Bitcoin transactions.  Once you register on the site, you can receive posts and reply to posts through your email address.  MICHAEL LORD utilized multiple email addresses including INTERNET1515@gmail.com and RPAC_INTERNET@hotmail.com.

33) RANDALL LORD utilized the email address RANDALLLORD@gmail.com which was listed on almost all bank accounts owned by him or his businesses, including QUANTUM HEALTH, LLC.

34) In July 2014, RANDALL LORD falsely represented to Coinbase that he was registered as an MSB with FinCEN and that he had an anti-money laundering/BSA policy and actual procedures implementing such policies as required by statute and by FinCEN.  See 18 U.S.C. § 1960; 31 U.S.C. § 5318(h).

**INVESTIGATIVE RESULTS**

35) MICHAEL LORD and RANDALL LORD are associated with five business entities: PELICAN MINING, LLC, QUANTUM HEALTH, LLC, CRYPTO PROCESSING SOLUTIONS, LLC, DATA SECURITY, LLC and JEWELLA CHIROPRACTIC, LLC.

36) Financial records and business correspondence for QUANTUM HEALTH, LLC utilize the home address of the LORDS, 10022 Winding Ridge Drive, Shreveport, LA 71106.  The QUANTUM HEALTH, LLC organization paperwork listed the business address as P.O. Box 382, Waskom, TX 75692.

37) Since at least 2013, the LORDS have used numerous bank accounts to facilitate the sale and transfer of Bitcoins, utilizing both personal accounts and business accounts titled in the name of their five business entities. For the purposes of the instant seizure warrant, only details of the investigation mostly related to QUANTUM HEALTH, LLC are discussed.

38) QUANTUM HEALTH, LLC was incorporated in Texas in 2014 solely by RANDALL LORD for the purposes of operating an MSB and facilitating the sale and transfer of Bitcoins. However, RANDALL LORD frequently misrepresented the nature of this business as a healthcare entity.

39) RANDALL LORD established a savings account and a checking account with Wells Fargo Bank, N.A., in March 2014 describing his business as "health care and social assistance" when opening the accounts. RANDALL LORD listed his position/title as "physician" and RANDALL LORD is not a practicing physician. He also reported $125,000 in gross sales for 2013. RANDALL LORD received deposits of money orders payable to QUANTUM HEALTH into his Wells Fargo account, and the deposits were followed by ACH withdrawals by Coinbase the same or next business day as the deposits.

40) RANDALL LORD established an account with Bank of America, N.A., for QUANTUM HEALTH on May 9, 2014. Cash and money orders made payable to QUANTUM HEALTH were deposited into this account and the deposits were followed by ACH withdrawals by Coinbase usually on the same or next business day.

41) RANDALL LORD established an account with Regions Bank for QUANTUM HEALTH on June 23, 2014. RANDALL LORD received deposits of cash and money orders payable to QUANTUM HEALTH into his Regions Bank account, and the deposits were followed by ACH withdrawals by Coinbase the same or next business day as the deposits.

42) RANDALL LORD established an account with Citibank, N.A. for QUANTUM HEALTH on August 22, 2014.  He described QUANTUM HEALTH as a home-based unincorporated dba business under the laws of the State of Texas in May 2014, offering "healthcare diagnostics and orthopedic support," and generating $150,000 in gross revenue.  On the Citibank business account application, RANDALL LORD responded "no" when asked whether he would provide money transmission services.  However, monthly Citibank account statements reflect money orders payable to QUANTUM HEALTH deposited into his account as well as ACH withdrawals by Coinbase.

43) On August 14, 2014, RANDALL LORD submitted an "Application for Merchant Processing" with MerchantOne to procure a credit card processing account in the name of QUANTUM HEALTH.  In the application, he represented that the business provided "health clinic" services with $400,000 annual income.

44) RANDALL LORD established an account for QUANTUM HEALTH with Ouachita Independent Bank on October 1, 2014.  He received money via credit card payments to this account which were followed by associated ACH withdrawals by Coinbase.

45) RANDALL LORD established an account with Barksdale Federal Credit Union for QUANTUM HEALTH on October 16, 2014 and represented that he did not provide financial services to customers.

46) On November 12, 2014, RANDALL LORD electronically signed and submitted a "Merchant Application" with PaySimple to procure a credit card processing account in the name of "Randall Lord d/b/a Quantum Health".  In this application, LORD represented that the business was "Health & Medical Services/Chiropractor".  He did not indicate that the business provided financial services to customers.

47) RANDALL LORD submitted an "Application for Merchant Processing" with CDG Commerce on behalf of QUANTUM HEALTH on December 2, 2014 to procure a credit processing account.   In this application, RANDALL LORD described QUANTUM HEALTH as "Medical Offices/ Services and Health".  He further described services as "tests or care" when describing the return and refund policy.  The CDG Commerce Merchant account was closed on January 12, 2015 by risk assessment personnel because the alleged business type could not be verified.

48) According to certain merchant card processing records obtained during the course of the investigation, RANDALL LORD was receiving funds from fraudulent or stolen credit cards and then purchasing Bitcoins for his customers.

49) In early November 2014, RANDALL LORD registered as a money service business with "FinCEN."  The Financial Crimes Enforcement Network ("FinCEN") is an agency of the United States Department of Treasury whose mission includes the regulatory responsibility for administering the Bank Secrecy Act. In the registration, the only account disclosed by RANDALL LORD is his PELICAN MINING, LLC account at Citibank.   There is no disclosure of any of the other funnel accounts utilized by MICHAEL LORD and RANDALL LORD, nor any mention of the other shell business names, including QUANTUM HEALTH, LLC.  As of the date of this declaration, the LORDS have not obtained a license from the State of Louisiana authorizing them to operate as a money transmission business.  See La. Rev. Stat. § 6:1033(A).

**UNDERCOVER OPERATION RESULTS**

50) On November 17, 2014, UCA1 made contact with MICHAEL LORD through a website LocalBitcoins.com. UCA1 requested to purchase $2,000 worth of Bitcoins.  MICHAEL

LORD requested to meet face to face to complete the transaction. On November 19, 2014, UCA1 met with MICHAEL and RANDALL LORD at McDonalds on East Bert Kouns in Shreveport, LA.  UCA1 handed $2,000 in currency to RANDALL LORD, who counted the money and told MICHAEL LORD it was okay to proceed with the transaction.  MICHAEL LORD proceeded to complete the transfer of Bitcoins on his cell phone.

51) During the meeting, UCA1 made several requests to remain "anonymous."  MICHAEL and RANDALL LORD both agreed and stated they have been exchanging Bitcoins since 2012 (2 years). MICHAEL LORD made the comment "banks are really nosy."  RANDALL LORD made the comment "wish we could (stay out of banks)...don't like them."  UCA1 made a mention that he/she was looking for a new exchanger since "Silk Road" website was taken down.  MICHAEL LORD was not taken back by the statement.  UCA1 inquired if the LORDs would be willing to exchange larger dollar amounts.  MICHAEL LORD stated "they could go really big."  UCA1 and MICHAEL LORD agreed to exchange $15,000-$20,000. MICHAEL LORD stated UCA1 could deposit cashier's checks into their account to purchase some Bitcoins.  UCA1 indicated that depositing checks remotely would be fine for small purchases but UCA1 preferred face-to-face meetings for large purchases.

52) On December 2, 2014, UCA1 received a text message from MICHAEL LORD inquiring whether UCA1 was going to purchase anymore Bitcoins from him in the future.  UCA1 initiated a transaction via text message wherein UCA1 purchased $1,000 worth of Bitcoins by depositing a cashier's check into the account of CRYPTO PROCESSING SOLUTIONS at Citibank.

53) On February 4, 2015, UCA1 met with MICHAEL LORD and RANDALL LORD at McDonalds on East Bert Kouns in Shreveport.  UCA1 purchased $14,000 worth of Bitcoins

from MICHAEL LORD. The money was counted by RANDALL LORD. UCA1 made the representation that the money was from the sale of Steroids and UCA1 needed Bitcoins to pay the supplier in China. RANDALL LORD agreed that UCA1 did not want a paper trail. MICHAEL LORD and RANDALL LORD were observed at Regions Bank on Millicent in Shreveport. After contacting Regions Bank a few days later, it was learned that RANDALL LORD only deposited $4,000 of the $14,000 in his accounts at Regions. The disposition of the remaining $10,000 is not known at this time. As of the date of this declaration, there have not been any CTRs filed by RANDALL LORD or MICHAEL LORD.

54) On February 24, 2015, UCA1 met with MICHAEL LORD and RANDALL LORD at McDonalds on East Bert Kouns in Shreveport, Louisiana. UCA1 purchased $19,000 worth of Bitcoins from MICHAEL LORD. Once again, UCA1 made reference to the currency being proceeds of the sale of illegal Steroids/HGH. MICHAEL LORD and RANDALL LORD are observed on camera utilizing their cellular phones to conduct the Bitcoin transactions.

55) During each of the undercover meetings, neither MICHAEL LORD nor RANDALL LORD asked UCA1 for identifying information such social security number, date of birth, address, or full name.

56) The LORDS charge their customers approximately 5% above the Bitcoin market price. In the case of the face to face contacts with UCA1, MICHAEL LORD would actually sell UCA1 Bitcoins from his own Bitcoin wallet. The LORDS would replenish their wallet with the currency by purchasing Bitcoins at the lower market price. So, the LORDS would essentially earn extra Bitcoins on the transaction.

57) During the undercover operation, MICHAEL LORD communicated with UCA1 from the telephone number (318) 717-9796. We have reason to believe the same phone was used to conduct the Bitcoin transfer. The phone above was identified as a VOIP phone and the provider is Google Voice.

58) According to database research, RANDALL LORD has two (2) cell phones listed in his name: (318) 422-2791 and (318) 422-7562 and the provider is Verizon Wireless. During the undercover operation, RANDALL LORD was observed utilizing a cell phone.

**INDICTMENT, PLEA OF GUILTY AND JUDGMENT**

59) On November 18, 2015, MICHAEL LORD and RANDALL LORD were indicted for violations of Title 18 U.S.C. §§ 371, 1343,1956, 1960 and Title 31 U.S.C. §§ 5313.

60) RANDALL LORD plead guilty on April 19, 2016 to one count of conspiracy to operate an unlicensed MSB in violation of 18 U.S.C. §371. On May 24, 2017, RANDALL LORD was sentenced to forty-six (46) months of imprisonment to begin on July 11, 2017. .

61) MICHAEL LORD plead guilty on April 19, 2016 to one count of conspiracy to operate an unlicensed MSB in violation of 18 U.S.C. §371 and one count of drug conspiracy in violation of 21 U.S.C. §846. On May 24, 2017, MICHAEL LORD was sentenced to a total of one-hundred and six (106) months of imprisonment to begin on July 11, 2017.

62) MICHAEL LORD is currently incarcerated with the Federal Bureau of Prisons at the Memphis FCI and is scheduled for release on April 19, 2025. RANDALL LORD is currently incarcerated with the Federal Bureau of Prisons at the Atlanta USP and is scheduled for release on December 10, 2020.

63) In each of the respective plea agreements, the LORDS explicitly agreed to forfeit all interest in any asset subject to forfeiture directly, or as a substitute asset. The LORDS also agreed to

disclose the existence, nature and location of all assets forfeitable to the United States from 2013 through the date of the plea agreement, April 19, 2016. The LORDS further agreed that the United States may institute civil judicial forfeiture proceedings against all forfeitable assets and that they will not contest any such forfeiture proceedings.

## CONCLUSIONS OF AGENT/DECLARANT

64) Based upon the information in this declaration I believe there is probable cause that these funds were involved in transaction(s) in violation of Title 18 U.S.C. §§ 1956 and 1960 and/or represent or are traceable to the gross receipts obtained, directly or indirectly, from a violation of Title 18 U.S.C. § 1343 and are subject to seizure and civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (D). Accordingly, the seizure warrant should be issued pursuant to the provisions of 18 U.S.C. §981(b).

65) Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 11 day of December, 2018.

Darrin A. Heusel, Special Agent
Internal Revenue Service
Criminal Investigations

# RUFUS CRAIG LAW LLC

### ATTORNEYS AND COUNSELORS AT LAW

**704 South Foster Drive, Baton Rouge, Louisiana 70806**

TELEPHONE: (225) 928-0310      FACSIMILE: (225) 927-7919      EMAIL: rufus@rufuscraiglaw.com

April 2, 2019

Internal Revenue Service, Special Agent in Charge
ATTN: Asset Forfeiture Coordinator Darren Mayer
PO Box 2230
New Orleans, LA 70716-2230

> **IN Re: AFTRAK No. 58190001 - First National Bank of Omaha Bank
> Account No. XXX6984 in the amount of $194,073.14**

Mr. Mayer:

As we discussed previously by phone, please find enclosed a Claim of Ownership for Mr. Randall Lord regarding the above referenced property. Thank you very much for the extension of time in which to prepare this claim and get it to our client to review and sign.

Please note that we have advised our client of the terms of his plea agreement in which he agreed to cooperate with forfeiture. As stated in the claim of ownership, neither we nor Mr. Lord intend this claim to be construed as a lack of cooperation with the terms of his plea agreement. We understand that Mr. Lord agreed to asset forfeiture in at least some amount. We simply wish to have a judicial determination of whether this *entire* amount is properly subject to forfeiture, especially in light of the recent Supreme Court decision on the subject, and will cooperate fully in that determination.

Please let us know if you require any additional documentation or have any questions. Please also advise what the next steps in the process will be.

Sincerely,

Everett C. Baudean
Rufus Craig Law LLC

Internal Revenue Service, Special Agent in Charge
ATTN: Asset Forfeiture Coordinator Darren Mayer
PO Box 2230
New Orleans, LA 70716-2230

IN Re:        **AFTRAK No. 58190001 - First National Bank of Omaha Bank
Account No. XXX6984 in the amount of $194,073.14**

## CLAIM OF OWNERSHIP

I, Randall Lord, hereby submit a claim of ownership to the above-described property as follows:

1.

I am the owner of the above-referenced bank account.

2.

I am currently incarcerated in USP Atlanta pursuant to a Guilty Plea entered in Case 5:15-cr-00240-SMH-MLH. A copy of the guilty plea is attached.

3.

As a part of this guilty plea, I plead to Count One of the Indictment against me, namely, "Conspiracy to Operate an Unlicensed Money Servicing Business" in violation of 18 U.S.C. § 371. By the agreement, I did not plead guilty to any of the other charges in the indictment. A copy of the indictment is attached.

4.

The Notice of Asset Forfeiture that I received identifies the basis of the forfeiture as a transaction in violation of 18 U.S.C. § 1960. However, I did not plead guilty to a violation of that statute in the Plea Agreement.

5.

Additionally, the Forfeiture Allegation of the Indictment states that, upon conviction, I shall forfeit any property involved in the offense or traceable to the offense. However, I only plead guilty, and was thus only convicted, of Count One. The monetary amounts listed in the "Overt Acts" section of Count One of the Indictment do not add up to the amount of money in the above-referenced account.

6.

In Section E of my Plea Agreement, I agreed to forfeit all interest in any property that is subject to forfeiture. I further waived any challenges to any forfeiture carried out in accordance with the plea agreement.

7.

I fully intend to meet my obligations for forfeiture under the terms of the Plea Agreement and cooperate in determining what property is properly forfeitable under the agreement. Nothing in this claim of ownership is to be construed as an attempt to challenge any forfeiture properly carried out in accordance with the Plea Agreement.

8.

However, the Plea Agreement does not specify what total amount of money is subject to forfeiture, and it is unclear to me whether the entire sum in the above-referenced account is subject to forfeiture under the plea agreement for the reasons stated above.

9.

Further, my wife is suffering hardship due to my incarceration, and any money in the above referenced account that may not be subject to forfeiture under the Plea Agreement would help to alleviate this hardship.

10.

Accordingly, I respectfully request judicial determination of the forfeiture to determine, with specificity, how much of my property is properly subject to forfeiture under the terms of the Plea Agreement I entered into.


I declare under penalty of perjury that the foregoing is true and correct.


Executed this 27 day of March            , 2019.



RANDALL B. LORD

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS<br>UNITED STATES OF AMERICA | DEFENDANTS<br>$194,073.14 IN UNITED STATES CURRENCY |
|---|---|
| (b) County of Residence of First Listed Plaintiff<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| (c) Attorneys *(Firm Name, Address, and Telephone Number)*<br>United States Attorney's Office<br>300 Fannin Street, Suite 3201<br>Shreveport, LA 71101-3068  (318) 676-3600 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>      & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>      Student Loans<br>      (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>      of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>      Liability<br>☐ 320 Assault, Libel &<br>      Slander<br>☐ 330 Federal Employers'<br>      Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>      Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>      Product Liability<br>☐ 360 Other Personal<br>      Injury<br>☐ 362 Personal Injury -<br>      Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>      Product Liability<br>☐ 367 Health Care/<br>      Pharmaceutical<br>      Personal Injury<br>      Product Liability<br>☐ 368 Asbestos Personal<br>      Injury Product<br>      Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>      Property Damage<br>☐ 385 Property Damage<br>      Product Liability | ☐ 625 Drug Related Seizure<br>      of Property 21 USC 881<br>☒ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>      28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>      3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>      Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>      Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>      Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>      Accommodations<br>☐ 445 Amer. w/Disabilities -<br>      Employment<br>☐ 446 Amer. w/Disabilities -<br>      Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>      Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>      Conditions of<br>      Confinement | **LABOR**<br>☐ 710 Fair Labor Standards<br>      Act<br>☐ 720 Labor/Management<br>      Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>      Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>      Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>      Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>      or Defendant)<br>☐ 871 IRS—Third Party<br>      26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br>      Act/Review or Appeal of<br>      Agency Decision<br>☐ 950 Constitutionality of<br>      State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 981(a)(1)(A) and D(vi); 28 U.S.C. 1345ff

Brief description of cause:
Civil Forfeiture

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
06/28/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/Tass D. Waterston (TX 90001809)

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____